UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| HAPPY VALLEY ROAD LLC, | Case No. 3:22-cv-06115-LB |
| Plaintiff, | **ORDER DISMISSING CASE** |
| v. | Re: ECF No. 9 |
| AMGUARD INSURANCE COMPANY, | |
| Defendant. | |

# INTRODUCTION

The plaintiff, Happy Valley Road LLC, owns and rents residential properties in Orinda, California, through short-term leases. The COVID-19 pandemic disrupted the short-term-rental market, resulting in financial loss to the plaintiff. The plaintiff submitted a claim to its insurer, Amguard Insurance Company, for compensation for its business losses attributable to what it claimed was direct physical loss (which is covered by the policy). Amguard denied the claim. The plaintiff then sued Amguard for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.

Amguard moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), in part because a policy that covers "physical loss" does not cover losses incurred due to the COVID-19 pandemic and in part because the plaintiff did not allege other requirements for coverage. The plaintiff countered that the court should stay the case because the Ninth Circuit has certified to the California

Supreme Court the question whether the actual or potential presence of the COVID-19 virus constitutes direct physical loss or damage to property. The court grants the motion to dismiss and orders further briefing about a stay.

**STATEMENT**

The COVID-19 pandemic meant that the plaintiff could not rent its high-end short-term rentals in Orinda. It sought coverage for its loss under the policy, and Amguard denied the coverage claim. The plaintiff then sued for its business losses on the ground that the presence of the virus on its properties, "and the resulting governmental orders, cause[d] 'loss of use' and 'direct physical loss to property' within the meaning of those phrases" in the insurance policy.[1]

The next section excerpts the relevant policy terms.

**1. The Policy**

The plaintiff contends that its loss is covered under the policy's "Dwelling," "Dwelling Rental," "Broadened Home-Sharing Host Activities," and "Civil Authority Prohibits Use" coverages.[2] The first three require a "direct physical loss" to the plaintiff's property and the last requires direct physical loss to neighboring premises. (The policy does not contain a virus exclusion.)

**1.1 Coverages Requiring Direct Physical Loss to the Plaintiff's Premises**

The "Dwelling" coverage (Coverage A) covers "direct physical loss to property" and defines property as the insured's dwelling on the "residence premises," including attached structures.[3]

Under the "Dwelling Rental Coverage Endorsement" (Coverage D), the policy covers "lost rental value" if the insured has contracted with another person for "dwelling rental activities" for a specified period of time, and a "loss covered under Section I" (a "direct physical loss" to the

---

[1] Compl. – ECF No. 1-1 at 10–11 (¶¶ 25–26). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 10–11 (¶¶ 25–28), 27–29 (¶¶ 111–19).

[3] Policy, Ex. A to Kronenberg Decl. – ECF No. 9-1 at 25 (p. 22) (§ I.A.1(a)), 31 (p. 28) (§ I.A.1). Citations to the policy are first to the ECF number and then to the page number at the bottom center. The policy is also attached to the complaint, but this copy has page numbers on the bottom and thus is easier to use.

property) "makes that part of the 'residence premises' used for such 'dwelling rental activities' not fit to live in during the period of time specified in such contract or agreement." The loss is covered only if it occurs after the date of the rental agreement. Payments to the insured are for the lost rental value specified in the rental agreement, less any discontinued expenses, and they are paid "for the shortest period of time agreed upon" in the rental agreement.[4]

Under the "Broadened Home-Sharing Host Activities Coverage Endorsement" (Coverage D), the policy covers "lost rental value" if the insured has entered into an agreement for "home-sharing host activities" with another person through a "home-sharing network platform," and a covered loss ("direct physical loss" to the property) "makes that part of the 'residence premises' . . . not fit to live in during the period of time specified in such contract or agreement." Payments to the insured are for the lost rental value specified in the rental agreement, less any discontinued expenses, and they are paid for "the shortest period of time agreed upon" in the relevant agreement.[5]

**1.2  Coverages Requiring Direct Physical Loss to Neighboring Premises**

The "Civil Authority Prohibits Use" coverage (Coverage D) provides that if a civil authority prevents the insured from using the "residence premises" "as a result of direct damage to neighboring premises by a Peril Insured Against, or due to an evacuation mandated by a civil authority that is caused by a covered peril," then the policy covers "Fair Rental Value" for up to two weeks.[6] Put more plainly, the policy pays the fair rental value for up to two weeks if a civil-authority order prohibits the plaintiff from using the property, the civil-authority order issues because of damage at a neighboring property, and the damage to the neighboring property was caused by "direct physical loss" to that property. Alternatively, the policy covers the rental value if the plaintiff is prohibited from using its property by an evacuation order issued as a result of "direct physical loss" to the neighboring property.

---

[4] *Id.* at 75 (p. 72) (§ I.D.2(a)).

[5] *Id.* at 82 (p. 79) (§ I.D.2(a)).

[6] *Id.* at 55 (p. 52) (§ I.D.3).

ORDER – No. 22-cv-06115-LB   3

**2. Procedural History**

The plaintiff sued Amguard in state court in Pennsylvania. That court granted Amguard's motion to dismiss the case for forum non conveniens without prejudice to the plaintiff's refiling the case in California.[7] The plaintiff did so in state court, and Amguard removed the case to federal court on October 17, 2022, asserting diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.[8] 28 U.S.C. § 1332. All parties consented to magistrate jurisdiction under 28 U.S.C. § 636.[9] The court held a hearing on February 9, 2023.

**STANDARDS**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*,

---

[7] Order, Ex. B to Compl. – ECF No. 1-1 at 132.
[8] Notice of Removal – ECF No. 1 at 1–5.
[9] Consents – ECF Nos. 12, 13.

ORDER – No. 22-cv-06115-LB    4

898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should give leave to amend if the plaintiff could "articulate a cognizable legal theory if given the opportunity." *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017).

## ANALYSIS

The plaintiff claims it suffered loss because (1) "there was the presence, statistically certain presence, or suspected presence" of COVID-19 at its rental properties and (2) government orders prevented it from using the properties "to conduct its ordinary business activities."[10] Amguard moved to dismiss, quoting *Musso & Frank Grill Co. v. Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 760 (2022): "there is no real dispute [that] under California law, a policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic."[11] The Ninth Circuit recently certified to the California Supreme Court the question of whether the actual or potential presence of the COVID-19 virus constitutes direct physical loss or damage to property.

---

[10] Compl. – ECF No. 1-1 at 10–11 (¶¶ 25–26).

[11] Mot. – ECF No. 9 at 12 (cleaned up).

The complaint is dismissed without prejudice. First, most courts hold that the plaintiff's theories do not support coverage because the plaintiff did not allege direct physical loss or damage to property. (The court defers consideration of a stay pending further briefing.) Second, the plaintiff did not allege the remaining requirements for coverage under the Dwelling Rental Coverage, the Broadened Home-Sharing Host Activities Coverage, or the Civil Authority Prohibits Use Coverage. Third, the plaintiff did not plead a bad-faith claim.

**1. Direct Physical Loss**

A loss is physical if there is a "distinct, demonstrable, physical alteration of the property." *United Talent Agency v. Vigilant Ins. Co.*, 77 Cal. App. 5th 821, 830–32 (2022) (for there to be a physical loss, "some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term"). A physical loss "is widely held to exclude alleged losses that are intangible or incorporeal." *Mudpie, Inc. v. Traveler's Cas. Ins. Co. of Am.*, 15 F.4th 885, 891 (9th Cir. 2021). Absent a physical impact to the property, the loss of physical use of a property to generate income does not constitute direct physical loss to insured property. *Id.*

Courts thus have rejected claims like the plaintiff's. *See, e.g., id.* at 892–93 (allegations that "Stay at Home orders temporarily prevented [the plaintiff] from operating its store" did not trigger coverage for direct physical loss of or damage to property); *United Talent*, 77 Cal. App. 5th at 838 ("[T]he presence or potential presence of the [COVID-19] virus does not constitute direct physical damage or loss."); *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, No. 21-16814, 2022 WL 14476377, at *2 (9th Cir. Oct. 25, 2022) ("Although COVID-19 caused an interruption in [the insured's] business, the virus did not cause 'direct physical loss or physical damage' or 'risks of physical loss' as California courts have interpreted these phrases."); *Tao Grp. Holdings v. Emps. Ins. Co. of Wausau*, No. 22-15506, 2022 WL 17102363, at *2 (9th Cir. Nov. 22, 2022) ("Under California law, . . . 'the presence . . . of the [COVID-19 virus] does not constitute direct physical damage or loss' to property.") (cleaned up); *Baker v. Or. Mut. Ins. Co.*, No. 21-15716, 2022 WL

807592, at *1 (9th Cir. Mar. 16, 2022) ("[N]either the COVID virus nor COVID-related closure orders caused direct physical loss or damage within the meaning of the insurance policy.").

In sum, the plaintiff did not allege that its property was physically altered. Without that predicate, the mere loss of use of its rental property does not establish coverage. *United Talent*, 77 Cal. App. 5th at 830–34 (allegations of loss of use of insured premises did not establish "direct physical loss or damage"); *Protégé*, 2022 WL 14476377, at *2 ("[M]ere loss of use of physical property to generate business income, without any other physical impact on the property, does not give rise to coverage for direct physical loss.") (cleaned up); *Tao Grp.*, 2022 WL 17102363, at *2 ("Under California law, loss of use of property does not constitute 'direct physical loss of or damage to' property."); *accord Mudpie*, 15 F.4th at 891.

The plaintiff counters that a recent California Court of Appeal decision — *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* — compels a different result.[12] 81 Cal. App. 5th 96, 111–12 (2022). In *Marina Pacific*, hotels and restaurants sued their insurer under a policy that provided business-interruption coverage "for direct physical loss or damage" to insured property "caused by or resulting from a covered communicable disease event." *Id.* at 100. The policy provided for communicable-disease coverage. *Id.* The plaintiffs alleged actual incidents of COVID-19 contamination and alleged that — in response to employees' testing positive — health authorities ordered that the hotel be evacuated, decontaminated, or disinfected. *Id.* at 101–02. The court did not dismiss the case at the pleading stage because (1) the policy language "explicitly contemplate[d] that a communicable disease, such as a virus, [could] cause damage or destruction to property and that such damage constitutes direct physical loss or damage as defined in the policy," and (2) the insureds alleged that they were "required to dispose of property damaged by COVID-19." *Id.* at 111–12.

The plaintiff here did not allege similar facts. *See Tao Grp.*, 2022 WL 17102363, at *2 (distinguishing *Marina Pacific* on the grounds that the insured did not allege that "it had to dispose of property damaged by COVID-19" or that its policy "contained an express provision

---

[12] Opp'n – ECF No. 19 at 13.

ORDER – No. 22-cv-06115-LB          7

covering loss or damage resulting from communicable diseases") (cleaned up). Moreover, as the *Marina Pacific* court acknowledged, its conclusion was "at odds with almost all (but not all) decisions considering whether business losses from the pandemic are covered by the business owners' first person commercial property insurance." *Marina Pacific*, 81 Cal. App. 5th at 109. Parts of the decision conflict with *United Talent* and *Musso* (discussed above). Courts thus have refused to follow it when the policy — like the policy here — provides coverage only for direct physical loss. *See Creative Artists Agency, LLC v. Affiliated FM Ins. Co.*, No. 2:21-cv-08314, 2022 WL 3097371, at *5 n.3 (C.D. Cal. July 27, 2022); *Always Smiling Prods., LLC v. Chubb Nat'l Ins. Co.*, No. CV 21-5990 FMO (KSX), 2022 WL 4102315, at *3 n.5 (C.D. Cal. Sept. 6, 2022). This order (as discussed above) follows this authority, not *Marina Pacific*.

The plaintiff also contends that the court should stay the case because on December 28, 2022, after analyzing the tension between *Marina Pacific* and the other California cases, the Ninth Circuit certified the following question to the California Supreme Court:[13]

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute 'direct physical loss or damage to property' for purposes of coverage under a commercial property insurance policy?

*Another Planet Ent., LLC v. Vigilant Ins. Co.*, 56 F. 4th 730, 734 (9th Cir. 2022).[14]

The plaintiff in *Another Planet* was an event promoter and venue operator in California and Nevada. *Id.* at 732. After government closures forced the plaintiff to suspend its operations, it sought coverage from the defendant insurance company for its losses. *Id.* After the insurer denied coverage, the plaintiff sued, alleging breach of contract, bad faith, and fraud. *Id.* It sought coverage under several provisions that required actual or imminent "direct physical loss or damage to property:" (1) four "Business Income" provisions that the insurer will cover certain business-income losses if they are caused by "direct physical loss or damage" to property; (2) a "Civil

---

[13] Opp'n – ECF No. 19 at 7–8.

[14] After the parties submitted briefing, the Ninth Circuit certified a second question to the California Supreme Court on whether a virus exclusion was "unenforceable because enforcing it would render illusory a limited virus coverage provision allowing for the possibility of coverage for business losses" caused by the COVID-19 virus. *French Laundry Partners, LP v. Hartford Fire Ins. Co.*, No. 21-15927, 2023 WL 1772152, at *2 (9th Cir. Feb. 6, 2023). Because the policy here does not contain a virus exclusion, the question certified in *French Laundry Partners* is not relevant.

ORDER – No. 22-cv-06115-LB            8

1  Authority" provision that the insurer will cover losses caused by a civil authority's prohibition of
2  access to covered or dependent business premises as "the direct result of physical loss or damage
3  to property" within one mile of the premises; and (3) a "Loss Prevention Expenses" provision that
4  the insurer will cover costs incurred to protect a building or personal property from "imminent
5  direct physical loss or damage" caused by a covered peril if the insured provides notice of "any
6  loss prevention action" within forty-eight hours. *Id.*

7  The *Another Planet* plaintiff alleged that the COVID-19 virus was present at times on its
8  insured properties, or it would have been but for the closures. *Id.* It alleged that the virus stayed
9  suspended in air and infectious for sixteen hours and remain active on inert services for twenty-
10 eight days. *Id.* As a result, the plaintiff alleged, the presence of COVID-19 droplets "can render
11 both real and personal property unusable for its intended purpose and function, constituting
12 physical loss or damage." *Id.* Also, minimizing the spread of COVID-19 requires steps such as
13 physical distancing, regular disinfection, and physical alterations, such as physical barriers
14 minimizing the movement of the aerosolized droplets. *Id.* The district court granted the insurer's
15 motion to dismiss and dismissed the case with prejudice, concluding that it seemed unknowable
16 whether the COVID-19 virus was actually present on the plaintiff's premises. *Id.*

17 The Ninth Circuit considered the California cases discussed in this order: *Mudpie* and *United
18 Talent*, on the one hand, and *Marina Pacific*, on the other. *Id.* at 732–34. In light of this split of
19 authority, it certified the question of whether the actual or potential presence of the COVID-19 virus
20 constitutes direct physical loss or damage to property. *Id.* at 734.

21 Amguard contends that a stay is not warranted because the plaintiff did not plausibly plead a
22 claim for coverage under *United Talent* or *Marina Pacific*: (1) under *United Talent*, the plaintiff
23 did not plausibly plead physical alteration (as discussed above) or the other requirements for
24 coverage (as discussed below); and (2) under *Marina Pacific*, the plaintiff again did not allege a
25 physical alteration to property.[15] But the plaintiff's allegations on direct loss are close to those in

---

28 [15] Reply – ECF No. 20 at 16.

ORDER – No. 22-cv-06115-LB   9

both cases. The issue is whether the actual or potential presence of the virus constitutes direct physical loss or damage.

In *Landis*, the Supreme Court held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To determine whether a stay is appropriate, the court "must weigh competing interests and maintain an even balance." *Id.* at 254–55. The competing interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55); *accord Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "[I]f there is even a fair possibility" that the stay will harm the non-moving party, the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

At least one district court in the Ninth Circuit stayed a case after the California Supreme Court granted the Ninth Circuit's request for certification. *Goro v. Flowers Foods, Inc.*, No. 17-cv-2580 JLS (JLB), 2020 WL 804841, at *1 (S.D. Cal. Feb. 18, 2020). The plaintiffs there challenged their employers' classification of them as independent contractors (instead of employees). *Id.* After they filed their lawsuit, the California Supreme Court announced a new standard in *Dynamex* to distinguish independent contractors from employees but did not say whether the test applied retroactively. *Id.* (citing *Dynamex Operations W. Inc. v. Super. Ct.*, 4 Cal. 5th 916, 916, 964 (2018)). The Ninth Circuit certified the question of retroactivity to the California Supreme Court, which granted the request for certification. *Id.* (citing *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045 (9th Cir. 2019)).

Applying *Landis*, the *Goro* court stayed the case over the plaintiffs' objection, in part because "the California Supreme Court has now granted the Ninth Circuit's request and will answer the question expeditiously," which meant that "any wait for an answer to this important issue would be neither indefinite nor unreasonable." *Id.* at *2. It dismissed the plaintiffs' concerns about

discovery and observed that a delay in damages was an insufficient basis to deny a stay. *Id.* (citing *Lockyer*, 398 F.3d at 1010–12). It held that denying a stay would force "[p]reparing for trial without a clear answer on *Dynamex*'s retroactivity[, which] would cause unnecessary work for the Parties (and the Court), amounting to a hardship in this case." *Id.* at *3. The stay also promoted judicial efficiency by simplifying the issues in the case. *Id.* Thus, the weighing of hardships favored a stay, and the stay served the interests of judicial economy. *Id.* at *4.

In contrast to *Goro*, the California Supreme Court has not accepted certification of the issue here. Moreover, the parties' arguments here are cursory, and they did not cite or analyze cases where courts have stayed cases under similar circumstances. That said, the certified question — whether the actual or potential presence of the COVID-19 virus constitutes direct physical loss or damage to property — is the main coverage issue in this litigation. *Cf. Lockyer*, 398 F.3d at 1109–11 (discussing *Landis* factors in the context of numerous similar lawsuits). (As discussed below, the plaintiff probably can allege facts at the pleading stage to defeat some of Amguard's challenges to the plaintiff's failure to allege requirements for coverage.) If the California Supreme Court accepts the certification, then the stay avoids unnecessary work for everyone and serves judicial efficiency. *Cf. Golden Ent., Inc. v. Factory Mut. Ins. Co.*, No. 2:21-cv-00969-APG-EJY, 2022 WL 980692, at *1 (D. Nev. Mar. 30, 2022) (staying case pending Ninth Circuit's decision in a similar case and denying without prejudice an insurer's motion to certify to the Nevada Supreme Court the question whether an insured's claim related to the COVID-19 virus was a covered loss).

The court's quick research does not reveal that any courts have decided this issue. (The Ninth Circuit denied a motion to stay pending resolution of the question certified in *Another Planet*. *AECOM v. Zurich Am. Ins. Co.*, No. 22-55092, 2023 WL 1281675, at *1 n.1 (9th Cir. Jan. 31, 2023). But that decision turned on the conclusion that the "contamination exclusion" precluded coverage. *Id.*) The parties must at least brief the issue in a motion to stay.

**2. Failure to Allege Other Requirements for Coverage**

Amguard contends that the plaintiff did not plausibly plead a claim for coverage under the Dwelling Rental Coverage or Broadened Home-Sharing Host Activities Coverage for lost rental

value because the plaintiff did not allege (1) the existence of a contract and (2) the rented portion of the property was rendered unfit for habitation as a result of direct physical loss to the property.[16] In its opposition, the plaintiff did not address this argument, thus conceding the issue. The plaintiff also did not allege a viable claim under the Civil Authority Prohibits Use Coverage because it did not allege any facts establishing the elements: (1) a civil-authority order prohibited the plaintiff's use of its property; (2) the civil-authority order was issued because of damage at a neighboring property; and (3) the damage to the neighboring property was caused by direct physical loss to the property.[17] Also, — as Amguard asserts — the plaintiffs did not allege that the property was "not fit to live in."[18]

### 3. Breach of the Covenant of Good Faith and Fair Dealing

The plaintiff claims that by denying coverage, Amguard breached the covenant of good faith and fair dealing and acted in bad faith.[19] Amguard counters that the claim fails because its coverage determination was consistent with the plain language of the policy and California law.[20]

To establish a claim for breach of the implied covenant under California law, "(1) benefits due under the policy must have been withheld[,] and (2) the reason for withholding benefits must have been unreasonable or without probable cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). Generally, "without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citing *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995)); *see also Love*, 221 Cal. App. 3d at 1153. The reasonableness of an insurer's claims-handling

---

[16] Mot. – ECF No. 9 at 16–17; Reply – ECF No. 20 at 13.

[17] *See supra* Statement (setting forth provision).

[18] *See supra* Statement (setting forth this coverage provision); Mot. – ECF No. 9 at 17–18 (addressing insurance-coverage provisions); Reply – ECF No. 20 at 13–15 (same).

[19] Compl. – ECF No. 1-1 at 31 (¶ 130), 35–36 (¶¶ 154–63); Opp'n – ECF No. 19 at 15.

[20] Mot. – ECF No. 9 at 16.

ORDER – No. 22-cv-06115-LB         12

1  process ordinarily is a question of fact. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152,
2  1161 (9th Cir. 2002).

3  In a recent case in this district analyzing similar insurance claims predicated on alleged
4  physical loss attributable to COVID-19, the court dismissed the claims for breach of contract and
5  declaratory relief on the ground that "[t]he overwhelming majority of courts (including courts in
6  this district) have concluded that neither COVID-19 nor the governmental orders associated with it
7  cause or constitute property loss or damage for purposes of insurance coverage." *Sar Holdings,*
8  *Inc. v. Affiliated FM Ins. Co.*, No. 22-cv-01565-TLT, 2023 WL 1096359, at *4, *7 (N.D. Cal. Jan.
9  18, 2023) (collecting cases and dismissing claims "without prejudice given the impending
10 certifying question to the California Supreme Court"). It then dismissed a claim for breach of the
11 implied covenant. *Id.* at *6.

12 The bad-faith claim in *Sar* was different from the claim here: the *Sar* plaintiff claimed a bad-
13 faith denial of coverage under the Communicable Disease Coverage. The insurer contended that the
14 claim was not ripe in part because it had not denied coverage. Relevantly here, in dismissing the
15 claim without prejudice, the court held that the plaintiff had not alleged that withholding benefits
16 under the coverage was unreasonable: the defendant "has not denied the Plaintiff's Communicable
17 Disease claims, and the mere denial of benefits under other provisions of the Policies does not
18 demonstrate bad faith." *Id.* In reaching this conclusion, the *Sar* court held that "where [a] policy
19 dispute involved a genuine legal issue concerning liability, [the] insurer could not have been acting
20 in bad by refusing to pay [the] claim." *Id.* (citing *Safeco Ins. Co. of Am. v. Guyton*, 692 F.2d 551,
21 557 (9th Cir. 1982)). "Rather, there must be proof [that] the insurer failed or refused to discharge its
22 contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a
23 conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints
24 the reasonable expectations of the other party thereby depriving that party of the benefits of the
25 agreement." *Id.* (cleaned up) (quoting *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949
26 (2006)); *accord Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, No. 20-cv-03674-BLF, 2021 WL
27 4442652, at *6 (N.D. Cal. Sept. 28, 2021) (by failing to adequately allege that benefits were due it,
28

the plaintiff did not provide a plausible basis for its good-faith-and-fair-dealing claim), *aff'd*, 2022 WL 14476377 (9th Cir. Oct. 25, 2022).

The plaintiff here did not allege that Amguard withheld benefits unreasonably and thus did not plausibly claim breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

The court dismisses the claims with leave to amend. The claims for breach of contract and declaratory judgment, to the extent they are predicated on direct loss, are dismissed without prejudice to refiling after any decision from the California Supreme Court addressing the certified question in *Another Planet*. Otherwise, the dismissal is with leave to amend.

The plaintiff must file an amended complaint or a motion to stay within twenty-eight days. Any amended complaint must attach a blackline of the amended complaint against the current complaint.

**IT IS SO ORDERED.**

Dated: February 22, 2023

_____
LAUREL BEELER
United States Magistrate Judge